Justice Alito,
concurring.
I join the opinion of the Court but emphasize the limits of today’s holding. The Court holds that jail administrators may require all arrestees who are committed to the general population of a jail to undergo visual strip searches not involving physical contact by corrections officers. To perform the searches, officers may direct the arrestees to disrobe, shower, and submit to a visual inspection. As part of *341 the inspection, the arrestees may be required to manipulate their bodies.
Undergoing such an inspection is undoubtedly humiliating and deeply offensive to many, but there are reasonable grounds for strip searching arrestees before they are admitted to the general population of a jail. As the Court explains, there is a serious danger that some detainees will attempt to smuggle weapons, drugs, or other contraband into the jail. Some detainees may have lice, which can easily spread to others in the facility, and some detainees may have diseases or injuries for which the jail is required to provide medical treatment. In addition, if a detainee with gang-related tattoos is inadvertently housed with detainees from a rival gang, violence may ensue.
Petitioner and the dissent would permit corrections officers to conduct the visual strip search at issue here only if the officers have a reasonable basis for thinking that a particular arrestee may present a danger to other detainees or members of the jail staff. But as the Court explains, corrections officers are often in a very poor position to make such a determination, and the threat to the health and safety of detainees and staff, should the officers miscalculate, is simply too great.
It is important to note, however, that the Court does not hold that it is always reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population. Most of those arrested for minor offenses are not dangerous, and most are released from custody prior to or at the time of their initial appearance before a magistrate. In some cases, the charges are dropped. In others, arrestees are released either on their own recognizance or on minimal bail. In the end, few are sentenced to incarceration. For these persons, admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an *342 alternative procedure is feasible. For example, the Federal Bureau of Prisons (BOP) and possibly even some local jails appear to segregate temporary detainees who are minor offenders from the general population. See, e. g., Brief for United States as Amicus Curiae 30; Bull y. City and Cty. of San Francisco, 595 F. 3d 964, 968 (CA9 2010) (en banc).*
The Court does not address whether it is always reasonable, without regard to the offense or the reason for detention, to strip search an arrestee before the arrestee's detention has been reviewed by a judicial officer. The lead opinion explicitly reserves judgment on that question. See ante, at 339. In light of that limitation, I join the opinion of the Court in full.

In its amicus brief, the United States informs us that, according to BOP policy, prison and jail officials cannot subject persons arrested for misdemeanor or civil contempt offenses to visual body-cavity searches without their consent or without reasonable suspicion that they are concealing contraband. Brief for United States 30. Those who are not searched must be housed separately from the inmates in the general population. Ibid. Similarly, as described by the Court of Appeals in Bull, 595 F. 3d 964, the San Francisco County jail system distinguishes between arrestees who are eligible for release because, for instance, they can post bail within 12 hours and those who must be housed for an extended period of time. Id., at 968. The former are kept in holding cells at a temporary intake and release facility where they are pat searched and scanned with a metal detector but apparently are not strip searched. Ibid. The latter are transported to a jail with custodial housing facilities where they are then strip searched prior to their admission into the general population. Ibid.